UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHERONDA DANIELS, ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:05-CV-2460-B |
| | § | |
| THE CITY OF DALLAS, ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM ORDER

This case comes to the Court on Plaintiffs' objections to the Magistrate Judge's May 10, 2007 Findings and Recommendation regarding three motions for summary judgment filed by the Defendants in this civil rights action. The Magistrate Judge recommends that the Court: grant Defendant Kent Wolverton's motion for summary judgment on qualified and immunity; grant in part the City of Dallas's motion for summary judgment; and grant Wolverton's motion for summary judgment on Plaintiffs' official capacity claims. The Magistrate Judge also recommends that all federal claims lodged against the Defendants be dismissed with prejudice and that this Court should decline to exercise supplemental jurisdiction over Plaintiffs' state claims. Plaintiffs timely filed objections to the Magistrate Judge's recommendation. This Court will conduct a *de novo* review of those portions of the Magistrate Judge's findings and recommendation to which Plaintiffs have filed objections. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

### I. Background

This case arises from a fatal collision between a police car and a pedestrian. The vehicle was driven by Kent Wolverton, an officer of the Dallas Police Department. On the evening of September 23, 2005, Wolverton was patrolling the area near Fair Park. (Def. Officer Wolverton's

App. in Supp. Mot. Summ. J. ["Defs. App."] 64).  Around 8:00 p.m. he heard a fellow officer, Officer Castro, radio for cover at the Larry Johnson Recreation Center.  (*Id.*).  According to Castro, Wolverton, and other Dallas officers, the recreation center is located in a high crime area often involving illegal drug and weapons activity.  (*Id.* at 25-54, 64).  Wolverton claims that he heard screaming in the background of the call.  (*Id.* at 64, 76).  Though the call was dispatched as a "code 1", or non-emergency call, Wolverton raced to the scene at a high rate of speed, believing that Castro was in a highly volatile and potentially dangerous situation.  (Def. App. 66; Pls.' App. in Supp. Resp. to Def.'s Mot. Summ. J. ["Pl. App."] 23-24, 116).  But because Castro's call for assistance was dispatched as a "code 1", Wolverton did not engage his overhead lights or siren.  (Def. App. 64). As Wolverton was proceeding toward the recreation center, he traveled through a residential area at speeds approximating 60 miles per hour.  (Pl. App. 23-24, 166).  As he neared a grocery store on Dixon Avenue, Wolverton swerved around a vehicle stopped in the roadway and violently struck L.V. Daniels Jr., who was crossing the street on foot.  (Def. App. 18, 20, 64-65).[1]  Daniels was flung from the point of impact, suffered severe injuries, and later died.

      On December 12, 2005, Daniels's wife and parents filed this lawsuit against Wolverton (in his individual and official capacities) and the City of Dallas for civil rights violations under federal and state law.  In their objections Plaintiffs do not challenge the Magistrate Judge's finding that Plaintiffs abandoned all federal claims against Wolverton save for their substantive due process claim. The Magistrate Judge's recommendation thus focuses on Plaintiffs' complaint that Wolverton's reckless actions deprived Daniels of his right to substantive due process under the Fourteenth

---

[1] Plaintiffs claim that Wolverton achieved speeds in excess of 60 miles per hour while on Dixon. (Objections at 5).  Plaintiffs cite to no evidence substantiating this assertion, however.

Amendment to the United States Constitution and that an unwritten policy of the City of Dallas allowed Wolverton to operate his patrol car in a reckless manner. The Magistrate Judge concluded that Plaintiffs failed to provide sufficient evidence of a substantive due process violation and accordingly granted summary judgment in favor of Wolverton on his qualified immunity defense. The Magistrate Judge also found that Plaintiffs' claims against Wolverton in his official capacity were duplicative of those brought against the City of Dallas. The Magistrate Judge determined that there was no basis for municipal liability, however, because Plaintiffs failed to prove an underlying constitutional violation. Finally, the Magistrate Judge concluded that Plaintiffs' state-based claims should be dismissed without prejudice under 28 U.S.C. § 1367(c)(3).

## II.  Objections

**A.     Plaintiffs Object That the Magistrate Judge Failed to Take the Facts in the Light Most Favorable to Plaintiffs**

Plaintiffs first complain that the Magistrate Judge adopted Defendants' version of the facts rather than his. It is axiomatic that, on summary judgment, courts are required to construe facts and draw reasonable inferences in the light most favorable to the non-movant. *See Scott v. Harris*, 127 S.Ct. 1769, 1774-1775 (2007). The Court is not convinced that the Magistrate Judge failed to adhere to these maxims, however. Plaintiffs first claim that the Magistrate Judge inappropriately accepted at face value Defendants' evidence that Wolverton heard a woman screaming in the background of Officer Castro's call for cover help. Wolverton testified that he heard yelling in the background of the call and that he particularly noticed the sound of a woman screaming. (Def. App. 64, 76). Plaintiffs claim that the dispatch tape itself "wholly contradict[s]" Wolverton's characterization of what he heard. (Pls.' Sur-Reply at 3). Having listened to the tape, however, the

Court must disagree with Plaintiffs' assessment. Though the background sounds on the tape are somewhat indistinct, loud crowd notices can be heard, dominated by what appears to be a female speaking in excited tones, to say the least. Nothing on the tape essentially discredits Wolverton's testimony that he subjectively believed that the background noises bespoke a volatile situation.

Plaintiffs also challenge the Magistrate Judge's reliance on Defendants' evidence that Officer Castro's call for assistance was precipitated by a hostile crowd that had gathered at the recreation center. In their objections Plaintiffs simply assert that they dispute this evidence without specifically referencing any rebuttal evidence of their own. (Objections at 11). Instead Plaintiffs refer back to their sur-reply brief, in which they complain, in conclusory fashion, that Defendants' position is supported by "self-serving" internal officer statements that were made in bad faith and constitute hearsay. (Pls.' Sur-Reply at 3). Plaintiffs offer no evidence to substantiate their charge that the statements were made in bad faith. Nor have they offered any argument in support of their claim that the statements are hearsay. One of the internal statements relied upon by Defendants is from Castro himself, who simply related his observation that a large and hostile crowd had gathered at the recreation center on the evening of September 23, 2005. (Def. App. 27). In the absence of any evidence tending to refute Castro's testimony, the Court cannot find that the Magistrate Judge erred in relying on it.

Finally, Plaintiffs take issue with Defendants' evidence suggesting that the recreation center was located in a high crime area. Wolverton testified that the recreation center is "a chronic problem area and we receive many calls to that area regarding drugs and weapons." (*Id*. at 64). Again, although Plaintiffs strenuously dispute that the recreation area is a hotbed of crime, they present no evidence to the contrary. Plaintiffs simply argue that Wolverton's testimony is

controverted by the fact that Castro informed the dispatcher that his call for help was a "code 1", or non-emergency call. (Pls.' Sur-Reply at 3). This is a non-sequitur. Simply because Castro dispatched a non-emergency request for help does not necessarily mean that the area involved was not crime-ridden.

**B.    Substantive Due Process**

Plaintiffs next object to the Magistrate Judge's finding that the Wolverton's conduct did not violate Daniel's substantive due process rights. To make out a substantive due process claim Plaintiffs must show that "the behavior of [Wolverton was] so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8 (1998). In *Lewis*, the Supreme Court attempted to delineate the level of culpability necessary to set forth a substantive due process violation. It explained that negligent conduct will never shock a court's conscience. *Id.* at 849. On the other hand, unjustified actions by executive officials that are intended to cause injury are most likely to do so. *Id.* The difficulty comes when conduct falls in the middle band – "something more than negligence but less than intentional conduct, such as recklessness or gross negligence." *Id.* (internal quotations omitted). In such a case the court must conduct a searching inquiry into the facts and circumstances of the particular case in light of the right asserted. *Breen v. Texas A&M Univ.*, 485 F.3d 325, 333 (5th Cir. 2007).

Under *Lewis*, the level of culpability to be applied depends in large measure upon whether executive officials had time to reflect upon their actions. When "unforeseen circumstances demand an officer's instant judgment", such as in *Lewis*, where an officer was involved in a high speed car chase, consciences will be shocked only if the officer was motivated by an intent to harm. *Lewis*, 523 U.S. at 853-54. In circumstances where actual deliberation is practical, however, such as in custodial

prison situations, an official's mere deliberate indifference may rise to a conscience-shocking level. *Id.* at 850-51. Courts must look to whether the occasion at hand called for an official to take fast action and make decisions "in haste, under pressure, and [] without the luxury of a second chance." *Id.* at 853 (internal quotations and citation omitted).

The Magistrate Judge analogized the facts of this case to those involved in *Terrell v. Larson*, 296 F.3d 975 (8th Cir. 2005), a post-*Lewis* decision. In *Terrell*, two deputy sheriffs having dinner at a substation received a "very high priority" call concerning a domestic disturbance within their assigned area. *Id.* at 977. While en route to the scene, with emergency lights flashing and siren blaring, the deputies drove through a red light and collided with the car of Talena Terrell, killing her. *Id.* At the time of the impact the officers were traveling around 60-64 miles per hour. *Id.*

A majority of the Eighth Circuit, sitting en banc, held that the intent to harm standard announced in *Lewis* should apply to the officers' conduct because "police officers responding to this type of emergency call do not have 'the luxury . . . of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations.'" *Id.* at 979 (quoting *Lewis*, 523 U.S. at 853). The *Terrell* Court went on to hold that an intent to harm standard would apply even if the situation to which the officers were responding could not objectively be said to be a "true" emergency so long as the officers themselves subjectively "believed they were responding to an emergency call." *Id.* at 980.[2]

The *Terrell* Court alternatively concluded that, even if a deliberate indifference standard of fault applied, the plaintiffs' substantive due process claim would still fail because the officers' conduct

---

[2] The majority left open the question of "whether a different rule should apply if an official's claim of perceived emergency is so preposterous as to reflect bad faith." *Id.* at 980 n.2.

was not "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* at 981 (quoting *Lewis*, 396 F.3d at 981). In other words, the Court found that even deliberately indifferent conduct is not "conscience shocking in the constitutional sense" unless the court finds it to be so. *Id.* According to the majority of the Eighth Circuit, traffic accidents such as at issue in that case, while "tragic", fail to "shock the modern-day conscience." *Id.*

Here, the Magistrate Judge recognized that the officers in *Terrell* were responding to a "very high priority call" while Wolverton was responding to a "non-emergency" call. The Magistrate Judge nevertheless determined that this difference was not dispositive because Wolverton could have reasonably believed that Officer Castro may have been in danger and in need of immediate assistance. Under *Terrell*, Wolverton's subjective belief that he was responding to an emergency is alone sufficient for the intent-to-harm standard to apply. *Terrell*, 396 F.3d at 980. This Court appreciates that Wolverton's predicament placed him somewhere in between the poles recognized by *Lewis* – calm deliberation surely was not a practical alternative if he was to be of any use, even if the circumstances did not scream "emergency". Whether Wolverton made the right call in perceiving the situation as one necessitating a race to the scene is perhaps open for debate. The point to be made, however, is that Wolverton was placed in a situation demanding instant judgment without the ability to calmly and cooly ruminate about the steps he should take. *See Tejada v. Knee*, 228 F.3d 409 (Table), 2000 WL 1056124, at *2 (5th Cir. July 19, 2000) (concluding that officers' actions were subject to an intent-to-harm standard as opposed to a deliberate indifference standard because the "plaintiffs' allegations indicate[d] that the officers were acting under tense circumstances demanding their instant judgment, without the opportunity for repeated reflection.").

There is no evidence in the summary judgment record that Wolverton intended to harm Daniels or that he acted maliciously. Even assuming that Wolverton's behavior could be considered negligent or even reckless, it is not so egregious or outrageous that this Court's conscience is shocked by it. *See Lewis*, 523 U.S. at 847 n. 8. Numerous courts, in circumstances such as these, have found likewise. *See Smith v. Walden*, 228 F.3d 408 (Table), 2000 WL 1056091, at *1 (5th Cir. July 17, 2000) (concluding that substantive due process rights were not violated where deputy, responding to a call, drove at least 86 miles per hour on a wet city street without emergency lights on and without a siren, striking and killing fellow motorist)[3]; *Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996) ("Perhaps [deputy sheriff's] driving at a high rate of speed in a non-emergency or non-pursuit situation reveals gross negligence rather than negligence, but it does not transform a state tort claim into a constitutional deprivation[.]"); *Hill v. Shobe*, 93 F.3d 418, 421 (7th Cir. 1996) (no constitutional violation where officer – who was speeding, not responding to any police emergency, and failed to engage emergency lights or siren – ran a red light, killing other driver); *Leddy v. Township of Lower Merion*, 114 F.Supp.2d 372, 376 (E.D. Penn. 2000) (officer's conduct found not "constitutionally conscience shocking" where motorist was injured as a result of officer's traveling at an excessive rate of speed in response to a non-emergency call); *Gillyard v. Stylios*, 1998 WL 966010, at *5-6 (E.D. Pa. Dec. 23, 1998) (officers did not violate *Lewis* standard even if officers' response to request for police van was "improvident", where it was neither intentional nor malicious).

C.  **Claims Against the City of Dallas**

---

[3] The facts of Smith are taken from the district court's summary judgment order in *Smith et al. v. Walden et al.*, No. 2:97-CV-204-J (N.D. Tex. filed Oct. 14, 1999).

Plaintiffs continue to argue that the City of Dallas's inadequate training and policies permitted Wolverton to respond recklessly, and they seek to hold the City liable on that basis. The Magistrate Judge correctly concluded, however, that such claims against a municipality cannot survive in the absence of an underlying constitutional violation. *See Smith*, 2000 WL 1056091, at *1 (finding that plaintiffs' claims that county failed to adequately train officer or to have a policy governing the use of high speeds was not viable where there was no constitutional injury); *Leddy*, 114 F.Supp.2d at 377 (finding that township could not be held liable because of an inadequate policy or ineffective training program where the actions of the individual officer failed to reach the level of a constitutional violation).

### III.  Conclusion

In sum, after a review of the Magistrate Judge's findings and recommendation on the Defendants' motions for summary judgment and a *de novo* review of those portions to which Plaintiffs filed objections, the Court OVERRULES Plaintiffs' objections in all respects and ADOPTS the findings and recommendation of the Magistrate Judge.

**SO ORDERED.**

July 18th , 2007

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE